UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
LESLIE SHAPIRO,                          :
                                         :
           Plaintiff,                    :
                                         :    Civil Action No. 08-6204 (JAP)
     v.                                  :
                                         :    **OPINION**
                                         :
METROPOLITAN LIFE INSURANCE CO.;         :
THE AT&T DISABILITY PLAN, THE AT&T       :
DISABILITY INCOME PLAN, THE SBC          :
DISABILITY INCOME PLAN or AT&T           :
DISABILITY INCOME PENSION PLAN;          :
NETWORK MEDICAL REVIEW; R. KEVIN         :
SMITH, D.O.,                             :
                                         :
           Defendants.                   :
_____:

PISANO, District Judge.

Plaintiff Leslie Shapiro has brought this action against The AT&T Disability Plan, The AT&T Disability Income Plan, The SBC Disability Income Plan, and AT&T Disability Income Pension Plan[1] ("AT&T") to recover alleged underpayments of his long term disability benefits. Due to these reduced payments, Plaintiff alleges violations of the Employee Retirement Income Security Act ("ERISA"). This Court has original jurisdiction to hear this dispute pursuant to 28 U.S.C. § 1331.

Presently before the Court are both Plaintiff and Defendants' summary judgment motions. The Court heard oral arguments on April 21, 2010. For the reasons set forth herein, the Court grants Defendants' summary judgment motion, denies Plaintiff's summary judgment motion, and dismisses the case.

---

[1] At Oral Arguments on these motions, both parties consented to the removal of Metropolitan Life Insurance Company as a party and agreed to the dismissal of the breach of fiduciary duty claim. Further, Network Medical Review and R. Kevin Smith have been previously terminated as parties to this suit.

I. **Background**[2]

Plaintiff Shapiro was employed by AT&T beginning around 1998. In 2002, Shapiro was injured in a motor vehicle accident causing both neurological and physical impairments. Due to these injuries, Shapiro ceased employment at AT&T in October 2003 and qualified for long term disability ("LTD") benefits under the AT&T Disability Plan. AT&T paid Shapiro LTD benefits from October, 17, 2003 until December 21, 2005 at which time his claim was denied. In light of his denial of benefits, Shapiro elected to commence receiving pension benefits from AT&T's Management Pension Plan. Shapiro chose to receive a lump-sum cash payment which was rolled over into a traditional IRA and received a residual single life annuity with monthly payments deposited into his bank account. After cashing out his pension, Shapiro appealed the decision to terminate his LTD benefits. On September 5, 2006, after administrative review, Shapiro's LTD benefits were reinstated and Shapiro was paid retroactively for his LTD benefits from January 1, 2006.

In reinstating Shapiro's benefits, AT&T offset his retroactive and current LTD benefits by the single life annuity monthly equivalent of the pension benefits Shapiro elected to receive. This offset reduced Shapiro's net monthly benefit of $2,147.28 by $710.66 to a total of $1,436.62. AT&T initiated the offset to Shapiro's LTD benefits based on the language of the AT&T Disability Plan. Shapiro elected the Standard Option under the AT&T Disability Plan which provides:

> **E**. **Amount of Monthly Benefits**
>
>> 1. The amount of monthly benefits is as follows:
>>
>>> **(a) Standard Option**: 50 percent of the Eligible Employee's Eligible pay, subject to certain offsets as described below:

---

[2] The background is drawn from the undisputed facts set forth in Plaintiff's Rule 56.1 Statement of Material Facts and Defendants' Rule 56.1 Statement of Material Facts.

      **(i)**    **Offsets:** Disability benefits under the Standard Option shall be offset, dollar for dollar, for each dollar of benefits from one or more of the following:

    (1) Disability Insurance Benefits or an Old Age Insurance Benefits under the Social Security Act . . .

        \* \* \*

    (4) Disability, service or deferred vested pension payments under the AT&T Management Pension Plan (for Eligible Employees who have terminated their employment with the Company on or before December 31, 1997). The amount of such disability, service, or deferred vested pension payment which is used in determining and offsetting the total amount payable under the AT&T Management Pension Plan as of the date of retirement or termination of employment.

      (a) For Eligible Employees who have commenced distributions under the AT&T Management Pension Plan after January 1, 1998, the monthly single life annuity benefit that is or would be payable under the AT&T Management Pension Plan, regardless of the form in which the Eligible Employee chose to receive his or her pension, determined as of the date the pension payments commence, shall be used to determine the amount to be offset (pursuant to this subparagraph 4(a)) against the amount payable under this Plan.

      (b) The benefits paid under this Plan will be readjusted and such payment will be offset by the amount equal to the monthly single life annuity pension payment as of the date the Eligible Employee commences his or her pension payments, if an Eligible Employee elects to defer his or her pension payment when initially eligible to commence it.

Further, the AT&T Disability Plan contains the following language:

    Your LTD Plan benefits under the Standard Option are offset by any income you receive from the following sources:
- Primary Social Security benefits (payable to you)

      \* \* \*

- Any AT&T pension benefits as follows:
    - For LTD Plan benefits beginning before January 1, 1998, any AT&T pension benefits you may have been entitled to receive at the time your LTD Plan benefits began.
    - For LTD Plan benefits beginning on or after January 1, 1998, the benefits you receive from the AT&T Management Pension Plan (including rollover distribution from the AT&T Management Pension Plan) while you are receiving LTD Plan benefits (please refer to <u>About AT&T Pension Benefits</u>).

Additionally, the AT&T Disability Plan states that

> [i]f your LTD Plan benefits begin on or after January 1, 1998, you may elect to defer distribution of your pension benefit under the AT&T Management Pension Plan until your LTD Plan benefit ends.  If you defer distribution of your pension benefit, you will receive the maximum LTD Plan benefit available to you through the LTD Plan.  In addition, there will be no offset to your pension benefit amount, and you can preserve your pension for later use.
>
> If you are taking a distribution of any form (including a rollover into an IRA) from the AT&T Management Pension Plan while you are receiving LTD plan benefits, your monthly LTD Plan benefit will be permanently reduced.  This reduction amount is the value of the monthly single life annuity available to you under the AT&T Management Pension Plan – regardless of the form of the pension you actually receive.  Once you have commenced your pension, you cannot change your election.

On November 20, 2006, Shapiro submitted a letter disputing the offset of his LTD benefits.  On December 18, 2006, Shapiro's claim was referred to a neutral third party Claims Administrator for review.  The AT&T Disability Plan provides that the

> Claims Administrator shall serve as the final review committee under the Long Term Disability Plan and shall have sole and complete discretionary authority to determine conclusively for all parties, and in accordance with the terms of the documents or instruments governing the Long Term Disability Plan, any and all questions arising from administration of the Long Term Disability Plan and interpretations of all Long Term Disability Plan provisions.

On January 25, 2007, the Claims Administrator denied Shapiro's claim pursuant to the terms of the AT&T Disability Plan.  Following this denial on June 20, 2007, Shapiro appealed the offset claim determination asserting that his pension benefits did not "commence" while he was

receiving LTD benefits and therefore should not act as an offset. In response, on January 30, 2008, the Claims Administrator upheld his prior decision that the offsetting pension benefits from his LTD benefits was pursuant to the terms of the AT&T Disability Plan.

On December 17, 2008, Plaintiff Shapiro commenced this action against Defendants to recover alleged underpayments of his long term disability benefits based on violations of ERISA.

II.    **Discussion**

A.   **Summary Judgment Standard**

To prevail on a motion for summary judgment, the moving party must establish "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The district court must determine whether disputed issues of material fact exist, but the court cannot resolve factual disputes in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In determining whether a genuine issue of material fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stephens v. Kerrigan*, 122 F.3d 171, 176-77 (3d Cir. 1997). The moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its opening burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id*. at 324. Thus, the non-moving party may not rest upon the mere allegations or denials of its pleadings. *Id*. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

Once the moving-party has demonstrated to the court the absence of a material fact at issue, the Supreme Court has stated that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Matsushita*, 475 U.S. at 586-87 (citations omitted). In other words, "[i]f the evidence [submitted by the non-moving party] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The Supreme Court has specifically recognized that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses, and [] that [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex*, 477 U.S. at 323-24. Thus, "[w]hen the record is such that it would not support a rational finding that an essential element of the non-moving party's claim or defense exists, summary judgment must be entered for the moving party." *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 341 (3d Cir. 1990).

B.  **Legal Analysis**

The issue presented is whether the language of the AT&T Disability Plan requires a pension offset if a participant commences pension benefits while the participant's LTD benefits have been denied and then are later retroactively reinstated. As an initial step in interpreting the AT&T Disability Plan, the Court must determine whether the terms of the ERISA documents are ambiguous. *Bill Gray Enters. v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001) ("Whether the terms in an ERISA Plan document are ambiguous is a question of law."). Terms are considered ambiguous if they are subject to reasonable alternative interpretations. *Id*. In determining

whether terms are ambiguous in ERISA plans, the Court must look to the plain language of the documents. *Id.*; *see Henglein v. Colt Indus. Operating Corp. Informal Plan*, 91 Fed. Appx. 762, 766 (3d Cir. 2004) ("[T]he starting point is the words of the Plan."). If the language of the ERISA Plan is self-evident, the Court must not look to other evidence and the analysis is complete. *Bill Gray Enters.*, 248 F.3d at 218; *see Lettrich v. J.C. Penney Co.*, 90 Fed. Appx. 604, 611 (3d Cir. 2004) ("To the extent that an ERISA plan document is unambiguous, oral statements and other extrinsic evidence may not be introduced to modify its meaning."). However, if the plain language of the Plan is open to differing interpretations, the Court may look to extrinsic evidence to resolve any ambiguities that exist. *Bill Gray Enters.*, 248 F.3d at 218.

If the terms of the ERISA Plan are found to be ambiguous, the Court must then determine whether the Claim Administrator's interpretation of the document is reasonable. *Id*. Where the interpretation of the terms of the plan is at issue, the standard of review for the denial of benefits is de novo unless the benefit plan gives the Claim Administrator authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the Claim Administrator is given authority to interpret the plan, the Court must defer to this interpretation unless it is arbitrary or capricious. *Id.* at 11; *McElroy v. SmithKline Beecham Health & Welfare Benefits Trust Plan*, 340 F.3d 139, 141-43 (3d Cir. 2003). Under the "arbitrary and capricious" standard, the Court may only overturn the Claim Administrator's decisions if it is "clearly not supported by the evidence in the record or the administrator has failed to comply with procedures required by the plan." *Vitale v. Latrobe Area Hosp*, 420 F.3d 278, 281-82 (2005). The Court may not substitute its own judgment as to the

interpretation of the plan where this heightened standard is deemed appropriate.  *Moats v. United Mine Workers of America Health and Retirement Funds*, 981 F.2d 685, 687-88 (3d Cir. 1992).

After review of the AT&T Disability Plan, the Court finds that the language of the Plan is not ambiguous and clearly states that when a participant receives his pension benefits during the same time period where LTD benefits are distributed that an offset is required.  Taking the plain language, the Plan states that under the Standard Option a pension offset will occur where benefits are "receive[d] from the AT&T Management Pension Plan . . . while [a participant is] receiving LTD Plan benefits."  Further, the Plan instructs participants that "[i]f you are taking a distribution of any form (including a rollover into an IRA) from the AT&T Management Pension Plan while you are receiving LTD plan benefits, your monthly LTD Plan benefit will be permanently reduced."  The Plan's language indicates that at any point in time when a participant is receiving his pension benefits while also receiving his LTD benefits an appropriate offset must occur.  Plaintiff argues that the offset is only applicable where a pension is *commenced* while a participant is receiving LTD benefits.  There is no language, however, in the Plan to support this interpretation.  In fact, the Plan only states that an offset is applicable if a participant is taking any pension distribution *while* receiving LTD benefits.  In this case, Shapiro has been and will continue to receive his monthly reinstated LTD benefits *while* also receiving his pension annuity making the offset applicable.  Further, Shapiro's retroactive LTD benefits would have been received after his election to commence his pension and therefore are also subject to the pension offset.  Because the language of the AT&T Disability Plan is clear and unambiguous as to the applicability of the pension offset, there is no need to consider other evidence.  Therefore, Defendants have acted appropriately by reducing Plaintiff's monthly LTD benefit payment.

Notwithstanding the Court's finding that the AT&T Disability Plan is unambiguous, even if the language of the Plan were determined to be ambiguous, the Claim Administrator's interpretation of the language was not arbitrary and capricious.  As an initial matter, the AT&T Disability Plan expressly provides the Claim Administrator with authority to determine eligibility for benefits or to construe the terms of the plan, thus invoking the arbitrary and capricious standard of review.  Under such a standard, disrupting the Claim Administrator's interpretation of the AT&T Disability Plan is not permitted unless the interpretation is clearly not supported by the evidence in the record.  Since the Claim's Administrator's decision was in accordance with the express provisions of the Plan and is certainly one reasonable interpretation of the language, the Claim Administrator's decision to offset Shapiro's LTD benefits with his pension distributions must be affirmed.

### III.    Conclusion

For the reasons set forth above, the Defendants' motion for summary judgment is granted.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Date:  April 30, 2010